IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 1, 2007 Session

## NORA ELIZABETH KILBY MOORE v. RONNIE DALE MOORE

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Bradley County**
**No. 91-124     John B. Hagler, Jr., Judge**

---

**No. E2005-02469-SC-R11-CV - Filed September 5, 2007**

---

We granted permission to appeal to determine whether income from a nonrecurring capital gain may be considered in determining a parent's gross income for purposes of modifying child support. We hold that income from an isolated or "one-time" capital gain must be included in calculating gross income and that the trial court erred in dismissing the petition to modify child support. Accordingly, we affirm the judgment of the Court of Appeals and remand this case for calculation of child support pursuant to the Child Support Guidelines.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed;**
**Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK and GARY R. WADE, JJ., joined.

Roger E. Jenne, Cleveland, Tennessee, for the appellant, Ronnie Dale Moore.

John T. Rice, Chattanooga, Tennessee, for the appellee, Nora Elizabeth Kilby Moore.

**OPINION**

I.  Factual and Procedural Background

In 1978, Ronnie Dale Moore ("Mr. Moore") acquired by gift thirty shares of stock in Ed's Cycles, Inc. ("Ed's Cycles"), a business operated by his father. Mr. Moore's sister also acquired thirty shares of stock in Ed's Cycles. His father retained ninety shares of stock in the family business. Mr. Moore and his sister were both employees of Ed's Cycles. Mr. Moore married Nora Elizabeth Kilby Moore ("Ms. Moore") in 1980. After his father's death in 1982, Mr. Moore and his sister each inherited another forty-five shares of stock in the business.

When the parties divorced in May 1991, Mr. and Ms. Moore entered into a "Separation and Property Settlement Agreement" in which Mr. Moore was awarded all of his common stock in Ed's

Cycles. The agreement did not list any property as the "separate" property of either party. Ms. Moore was granted primary physical custody of the parties' two minor children, and Mr. Moore was ordered to pay $100 per week in child support.

In June 2001, Mr. Moore sold all of his shares of stock in Ed's Cycles to his sister for $687,550. His sister paid him an additional $100,000 for a covenant not to compete. At closing, Mr. Moore received twenty percent of the total sales price and $100,000, the amount of the covenant not to compete. The balance of the proceeds from the stock sale was secured by a promissory note to be paid in monthly installments over a five-year period. Mr. Moore left his employment at Ed's Cycles in June 2001 and remained unemployed until early 2002.

The parties' older child became emancipated in June 2001, the same month as the stock sale.[1] In December 2001, Ms. Moore filed a petition to modify child support, claiming that she is entitled to an increase in child support as a result of the income realized by Mr. Moore from the sale of his stock in Ed's Cycles. She contended that a "significant variance"[2] exists between Mr. Moore's current child support obligation and the amount of child support that would be owed if the income from the stock sale were included in the calculation.

The parties presented expert testimony concerning the value of the capital gain received by Mr. Moore, and the trial court denied Ms. Moore's petition to modify child support. The trial court concluded that a "one-time capital gain" should not be considered in calculating Mr. Moore's gross income for the purposes of determining his child support obligation. The trial court, therefore, made no finding as to the amount of the capital gain. The Court of Appeals reversed, holding that "there is no legal basis for an isolated capital gain rule." We granted review.

## II. Analysis

Whether income from a single or "one-time" capital gain must be included in calculating a parent's gross income for the purpose of modifying child support is a question of law. We review

---

[1] The parties' younger child appears to have been twelve or thirteen years of age at the time of the stock sale in June 2001.

[2] Child support modification is governed by Tennessee Code Annotated section 36-5-101(g) (2006). See Kaplan v. Bugalla, 188 S.W.3d 632, 636 (Tenn. 2006). Tennessee Code Annotated section 36-5-101(g)(1) provides, in pertinent part, "[u]pon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered . . . ." The current provision quoted above does not differ substantively from the pertinent language in the provision that existed at the time of the trial court's hearing in this case, Tennessee Code Annotated section 36-5-101(a)(1) (Supp. 2002), and we therefore cite to the current statute. Kaplan, 188 S.W.3d at 636 & n.5. The Child Support Guidelines in effect at the time the petition for modification was filed provided, however, that an order of support is not eligible for modification unless there is a "significant variance," defined as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month" between the Child Support Guidelines and the amount of support currently ordered. See Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1994). Because the pending petition was filed before the Child Support Guidelines were revised, the prior version is applicable. Kaplan, 188 S.W.3d at 637 n.6.

questions of law de novo, affording no presumption of correctness to the trial court's conclusions of law. Kesser v. Kesser, 201 S.W.3d 636, 644 (Tenn. 2006).

Our intermediate appellate court's decisions are in conflict concerning whether one-time capital gains must be included in calculating a parent's gross income for child support purposes. Some cases hold that the Child Support Guidelines do not require the inclusion of isolated capital gains transactions in gross income. See Eubank v. Eubank, No. 02A01-9110CV00242, 1992 WL 295546, at *3 (Tenn. Ct. App. Oct. 20, 1992) (concluding that the Child Support Guidelines do not "require the inclusion in gross income of an isolated capital gains transaction"); see also Hall v. Hall, No. 03A01-9701-GS-00030, 1997 WL 404258, at *3 (Tenn. Ct. App. July 21, 1997) (adhering to the holding in Eubank that the Child Support Guidelines do not require inclusion in gross income of isolated capital gains).[3] In other cases, however, the Court of Appeals has included one-time capital gains in the calculation of child support. See Ellis v. Ellis, No. E2003-01327-COA-R3-CV, 2004 WL 1102416, at *8-9 (Tenn. Ct. App. May 17, 2004) (approving of the use of a one-time capital gain from the sale of a house in calculating the obligor's gross income for child support purposes); Taylor v. Taylor, No. M1999-02398-COA-R3-CV, 2003 WL 21302988, at *9 (Tenn. Ct. App. June 6, 2003) ("As a general matter, all capital gains – even those realized from an isolated transaction – must be considered as gross income for the purpose of determining a parent's child support obligation."); Eldridge v. Eldridge, 137 S.W.3d 1, 22 (Tenn. Ct. App. 2002) (observing that the capital gain realized as a result of the sale of one of the parties' residences should be included when determining the obligor's income for child support purposes); Smith v. Smith, No. 01A-01-9705-CH-00216, 1997 WL 672646, at *3 (Tenn. Ct. App. Oct. 29, 1997) (rejecting the obligor's argument that the exercise of his stock options was a one-time event and concluding that the Child Support Guidelines "do not permit the trial court to ignore capital gains in calculating child support"). In the instant case, the Court of Appeals followed the more recent case law and concluded there is no legal basis for excluding isolated capital gains from the calculation of child support.

At the time Ms. Moore filed the petition for modification of child support at issue in this case, the Child Support Guidelines explicitly included "capital gains" in the definition of "gross income." The Child Support Guidelines broadly define gross income to "include all income from any source . . . whether earned or unearned, and includes but is not limited to . . . *capital gains.*" Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(1) (1994) (emphasis added).[4] The Child Support Guidelines do not exempt isolated capital gains from inclusion as gross income. Indeed, we have observed, "[g]enerally, capital gains are included in the definition of gross income." Brooks v. Brooks, 992 S.W.2d 403, 407 (Tenn. 1999); see also Kesser, 201 S.W.3d at 646 (noting that the

---

[3] Eubank, which seems to be the genesis of the isolated capital gain rule, is a memorandum opinion that, according to Rule 10 of the Rules of the Court of Appeals, "shall not be published, and shall not be cited or relied on for any reason in any unrelated case." Therefore, the Court of Appeals observed in the instant case that Eubank should not have been cited in Hall and that "[w]e regret that the trial court was led into error by our erroneous citing of a memorandum opinion."

[4] The Child Support Guidelines currently in effect likewise include capital gains in the definition of gross income. See Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(1)(xiii) (2006).

obligor's capital gains should be considered in calculating child support for modification purposes).[5] In addition to the inclusion of capital gains as "gross income," the Child Support Guidelines also include as "gross income" items such as bonuses, gifts, severance pay, and prizes, all of which are typically nonrecurring income. Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(1) (1994).

We now hold that under the Child Support Guidelines all capital gains, including those from an isolated transaction, should be considered in calculating gross income for the purpose of setting child support. This holding is consistent with the plain language of the Child Support Guidelines and with the goal expressed in the Child Support Guidelines that "to the extent that either parent enjoys a higher standard of living, the child(ren) share(s) in that higher standard." Tenn. Comp. R. & Regs. 1240-2-4.01(3)(e) (2006). The failure to include Mr. Moore's substantial capital gain as income in modifying his child support obligation would ignore the purpose and the plain language of the Child Support Guidelines and would deny his child the opportunity to enjoy the standard of living to which she is entitled.

### III. Conclusion

We hold that income from an isolated or "one-time" capital gain must be considered in calculating gross income for the purpose of modifying child support. Accordingly, we affirm the judgment of the Court of Appeals and remand this case to the trial court to determine the appropriate amount of child support based upon the parties' current financial information and the Child Support Guidelines. Costs of this appeal are taxed to the appellant, Ronnie Dale Moore, and his surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

---

[5] In Kesser, this Court also held that capital losses may not be considered in determining child support due from capital gains. 201 S.W.3d at 646. A recent statutory amendment, effective July 1, 2007, however, requires capital losses to be deducted from capital gains in each year for the purpose of calculating income pursuant to the Child Support Guidelines. See Act of May 18, 2007, 2007 Tenn. Pub. Acts 187 § 6 (amending Tennessee Code Annotated section 36-5-101(e)(1)(B)).