IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 7, 2013 Session

## MARYAM GHORASHI-BAJESTANI v. MASOUD BAJESTANI

**Appeal from the Chancery Court for Hamilton County**
**No. 08-0098    Jeffrey M. Atherton, Chancellor**

_____

**No. E2013-00161-COA-R3-CV-FILED-SEPTEMBER 24, 2013**

_____

This is the second appeal in this post-divorce matter.  Wife, Maryam Ghorashi-Bajestani ("Wife"), was granted a divorce from husband, Masoud Bajestani ("Husband"), on April 16, 2009.  Following the first appeal to this Court, the case was remanded to the trial court. Various petitions and motions were filed by the parties, seeking modification of the trial court's valuation of marital property, modification of child support, a lien on husband's assets to secure his child support and alimony obligations, a finding of contempt, and an award of attorney's fees.  The trial court, *inter alia*, modified Husband's child support obligation due to his reduced income, found Husband in contempt for his late payments of child support and alimony, and awarded Wife attorney's fees.  Both parties appeal the trial court's order.  We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

John P. Konvalinka and Jillyn M. O'Shaughnessy, Chattanooga, Tennessee, for the appellant, Maryam Ghorashi-Bajestani.

John R. Meldorf, III, Hixson, Tennessee, for the appellee, Masoud Bajestani.

**OPINION**

I.  Factual and Procedural Background

These parties were divorced after an eight-year marriage.  The two children born of

the marriage were ages seven and five years at the time of the divorce. During the marriage, Husband was employed at Tennessee Valley Authority ("TVA") as the vice president for Watts Bar Unit 2. The trial court found that Husband was earning $619,000 per year. Wife is also an engineer but was voluntarily unemployed at the time of the divorce because she wanted to be home for the children. The court imputed income of $72,000 per year to Wife for the purpose of setting child support.

Wife was named primary residential parent in the parties' permanent parenting plan, and she was awarded 275 days of co-parenting time per year. Husband was awarded 90 days per year. Husband was ordered to pay the maximum child support obligation of $3,200 per month, plus an additional $2,133 per month for the children's private school tuition and other expenses. Husband agreed at trial that he would pay for private school and extracurricular activities for the children through twelfth grade. This agreement was incorporated into the parties' permanent parenting plan.

The trial court equitably divided the parties' marital assets, including Husband's deferred compensation from TVA, which the court valued at $2.7 million. Husband testified that he was to receive distributions from his deferred compensation account in the near future. The trial court also awarded Wife transitional and periodic alimony, as well as attorney's fees of $42,000.

An appeal was taken to this Court, with this Court affirming the trial court's valuation and distribution of the parties' marital assets, including Husband's deferred compensation from TVA. The trial court's award of alimony was modified such that the award of transitional alimony was affirmed, but only for a period of six years. The award of periodic alimony thereafter was vacated. The trial court's award of attorney's fees was reduced to $10,000.

This Court also affirmed the trial court's award of child support as well as the trial court's finding that it was unnecessary to establish an educational trust for the children. This Court specifically found that the trial court did not err in imputing income to Wife for the purpose of setting child support. This Court did not rule on the trial court's failure to include the deferred compensation as income when calculating child support, as the trial court had already awarded the maximum allowable child support obligation under the applicable Guidelines.

Following the appeal, Husband filed a petition seeking modification of his child support obligation, stating that he had been terminated from his employment at TVA and no longer had income from that employment. He likewise sought a reduction in the amount of the transitional alimony payments due to his loss of income. Husband also filed a motion

pursuant to Tennessee Rule of Civil Procedure 60, requesting the court to modify its valuation of the deferred compensation account because his termination resulted in a loss of the unvested funds and thus a lesser amount of deferred compensation. Husband further sought instruction from the trial court regarding payment of Wife's portion of the deferred compensation distributions because he learned that TVA was going to deduct 35% of the gross distribution for estimated taxes.

Wife sought a modification of the permanent parenting plan, asserting that Husband had not been exercising the full extent of his ordered co-parenting time. Wife also sought a finding of contempt and an award of damages because Husband had failed to timely pay his child and spousal support obligations.

Following an evidentiary hearing, the trial court entered an order, making detailed findings of fact and conclusions of law. The court found, *inter alia*, that the credibility of both parties had been called into question, which caused the court to place greater emphasis on the documentary evidence but did not result in the court ignoring the parties' testimony altogether. The court chose to ignore Husband's Rule 60 motion regarding valuation of the deferred compensation, finding that it was essentially identical to an earlier motion Husband filed after entry of the initial judgment. The court noted that valuation of this asset was largely irrelevant because the only important matter was that Wife receive one-half, whatever its value.

Wife argued at trial that she was shortchanged in the distribution of the deferred compensation, as 35% of the disbursement was withheld for estimated taxes before Wife was given her portion. Wife argued that Husband's overall tax rate per his federal tax return was only 32%, resulting in Husband receiving a greater share of this asset. The trial court rejected this argument, however, finding that Husband's overall tax rate "accounts in part for [Husband's] other income, gains, losses, and exemptions independent of the deferred compensation disbursement, and should not be taken into account when calculating the amount taxed on the deferred compensation disbursement alone."

The court found that by reason of Husband's job loss, his income had decreased substantially, such that there was a significant variance mandating a reduction in child support. The court determined that Husband was not voluntarily unemployed or under-employed because his termination from TVA was involuntary and he had found temporary work in Australia. The court further found that although there was precedent to support inclusion of the deferred compensation distributions as income for the purpose of calculating child support, there was also authority to support the conclusion that it should not be included. The court reasoned that because the deferred compensation had already been divided as a marital asset, including the distributions as income would be "double-dipping."

The court therefore declined to include these distributions as income to either party for child support purposes.

The trial court concluded that Husband remained obligated to pay the children's expenses related to private school and extracurricular activities because he had agreed to do so at the time of the divorce. Regarding the decision to enroll the parties' daughter at Girls Preparatory School, although Husband claimed he did not agree to this increase in expenses, the trial court found that Husband had consented to this enrollment at least for the 2012-2013 school year. Therefore, the trial court found that Husband was obligated to pay for that year. The trial court instructed that if the parties were unable to reach an agreement as to the proper school for 2013-2014, an appropriate petition could be filed with the court. The trial court again found establishment of an educational trust to be unnecessary because there was no evidence that Husband was a flight risk.

The court determined that it was without authority to modify the award of transitional alimony. The trial court further found Husband to be in contempt for failing to timely pay his alimony and child support obligations. Wife was awarded damages in the form of her attorney's fees incurred.

Following the hearing, Husband filed a child support worksheet, with Wife objecting because it included the alimony Husband was paying Wife as income to her. Wife also objected to the continued imputation of income to her, as there was no current evidence of job opportunities in the area. Wife argued that if income were being imputed to her, it should also be imputed to Husband as well. Wife further sought inclusion on the child support worksheet of the actual number of co-parenting days Husband was spending annually with the children.

The trial court ordered Husband to reimburse Wife for the children's tuition, which obligation she had paid from her own funds. Husband was further ordered to pay outstanding tuition bills directly to the schools, to pay Wife an additional $1,629 that he owed her for the deferred compensation distribution, and to pay Wife's attorney's fees of $37,503. Husband's revised child support amount was set at $776 per month. Wife timely appealed.

## II. Issues Presented

The parties present the following issues for our review, which we have restated:

1.     Whether the trial court erred in its calculation of child support.

2.     Whether the trial court erred in awarding Wife one-half of Husband's

deferred compensation distribution reduced by 35% for estimated taxes when Husband's actual tax liability was less than 35%.

3. Whether the trial court erred in requiring Wife to seek judicial intervention if Husband did not agree to allow their daughter to continue attending Girls Preparatory School.

4. Whether the trial court erred in failing to provide Wife a security interest in Husband's assets to secure future payments of alimony and child support.

5. Whether the trial court erred in failing to reduce the value of TVA deferred compensation pursuant to Husband's Rule 60 motion.

6. Whether the trial court erred in awarding Wife attorney's fees for Husband's alleged contempt when Husband was the primary prevailing party.

7. Whether Wife should be granted an award of attorney's fees on appeal.

### III. Standard of Review

In this non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R. App. P. 13(d). We must honor this presumption unless we find that the evidence preponderates against the trial court's findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are not afforded the same deference. *Id.*

### IV. Child Support

This Court has described the proper standard of review for child support determinations as follows:

Setting child support is a discretionary matter. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. While we will set aside a

discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). *See also Massey v. Casals*, 315 S.W.3d 788, 798 (Tenn. Ct. App. 2009) ("We note that determinations of child support lie within the discretion of the trial court.").


### A. Inclusion of Deferred Compensation as Income

Wife contends that the trial court erred in failing to include the deferred compensation distributions as income to both parties for the purpose of calculating child support, as this money represents wages earned. Husband asserts that the trial court properly divided the deferred compensation as a marital asset, making the trial court's refusal to also include it as income correct. Husband also asserts that this issue was addressed and ruled upon by this Court in the previous appeal.

In the prior appeal, Wife did raise the issue of whether the deferred compensation funds should be considered income to Husband for the purpose of calculating child support. As pertinent to this issue, this Court stated:

> the Trial Court awarded the maximum presumptive amount, and Wife failed to prove by a preponderance of the evidence that more than this amount was reasonably necessary to provide for the needs of the children, as discussed fully above. As such, even if the Trial Court erred in not considering the funds in the deferred compensation plan when calculating child support, **and we make no finding regarding whether this was or was not error**, any such alleged error was harmless.

*Ghorashi-Bajestani v. Bajestani*, No. E2009-01585-COA-R3-CV, 2010 WL 3323743 at *21 (Tenn. Ct. App. Aug. 24, 2010) (emphasis added). This Court did not rule on the issue now presented.

Upon remand, when addressing the issue of the proper amount of child support (after finding that modification was warranted), the trial court concluded that "gross income" was broadly defined in the Child Support Guidelines, found at Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3)(a), as "all income from any source (before taxes and other deductions), whether earned or unearned, and including but not limited to, the following: wages, salaries, commissions, bonuses . . . ." The trial court also noted that in the case of *Huntley v. Huntley*,

61 S.W.3d 329, 335 (Tenn. Ct. App. 2001), this Court found that a father's deferred compensation should be included as income pursuant to the Guidelines.

The trial court explained, however, that because it had determined the deferred compensation constituted a marital asset subject to division incident to the parties' divorce, it could not be included as income for the purposes of calculating child support. The trial court's determination on this issue is correct. In 2000, Tennessee Code Annotated §36-4-121(b)(1)(E) (Supp. 2012) was amended such that it now expressly states:

> Property shall be considered marital property as defined by this subsection (b) for the sole purpose of dividing assets upon divorce or legal separation and for no other purpose; and **assets distributed as marital property will not be considered as income for child support or alimony purposes, except to the extent the asset will create additional income after the division.**

(Emphasis added.) In this case, the deferred compensation account was divided and distributed equally between the parties as a marital asset by the trial court. Therefore, any distributions of the principal amount of this asset would not be included as income to either party for child support purposes, based on the plain language of the statute. Any appreciation in the value of the account or income generated from those funds after distribution, however, would be included as income to the parties for child support purposes. *See Eldridge v. Eldridge*, 137 S.W.3d 1, 23 (Tenn. Ct. App. 2002); *Farmer v. Stark*, No. M2007-01482-COA-R3-CV, 2008 WL 836092 at *6 (Tenn. Ct. App. Mar. 27, 2008).

The trial court determined that Husband's income would be set at $8,500 per month for the calculation of child support. This amount represented his monthly retirement benefits from TVA. The trial court did not take into consideration, however, whether Husband was earning income from his investments, even though there was evidence of such earnings. *See* Exhibit 6 (Husband's Fidelity Investments Statement for June 2012, showing an increase of $8,869.74 for the month of June 2012). Based on the language of Tennessee Code Annotated §36-4-121(b)(1)(E) and the case law cited above, the trial court did not err in failing to include the principal amount of the deferred compensation account as income for child support purposes, but the court should have considered any appreciation thereon or income stream generated therefrom as income in the calculation of child support. We therefore remand this issue for the trial court's calculation and consideration of any such income.

### B. Inclusion of Husband's Income from Employment in Australia

Wife contends that the trial court also erred in failing to take into consideration Husband's income from his work in Australia when calculating child support. The trial court

noted in its opinion that Husband "was able to obtain employment from January 2012 through July 2012 in Australia, earning nearly $250,000 in gross income." The court did not, however, consider this income when setting child support. Husband argues that the trial court's failure to consider this income was appropriate because (a) the job was only temporary; (b) the cost of living in Australia was extremely high, such that he only netted $70,000-80,000 after his expenses were paid; and (c) he was entitled to a retroactive reduction in child support to the date he filed his petition, but the trial court did not grant same as a "balancing" of all the "factors."

The trial court made its ruling denying retroactive reduction within the same paragraph as the above finding regarding Husband's income from the employment in Australia; however, the trial court did not state that it was failing to consider this income because it was declining to grant a retroactive reduction in child support. In fact, the trial court did not elucidate any reason for failing to consider this income for child support purposes. The $250,000 that Husband earned in Australia is clearly income pursuant to the respective definition provided in the Child Support Guidelines, to wit:

> Gross income of each parent shall be determined in the process of setting the presumptive child support order and shall include all income from any source (before deductions for taxes and other deductions such as credits for other qualified children), whether earned or unearned, and includes, but is not limited to, the following:
>
> (i) Wages;
>
> (ii) Salaries;
>
> (iii) Commissions, fees, and tips;
>
> (iv) Income from self-employment;
>
> (v) Bonuses;
>
> (vi) Overtime payments;
>
> (vii) Severance pay;
>
> (viii) Pensions or retirement plans including, but not limited to, Social Security, Veteran's Administration, Railroad Retirement Board, Keoughs, and Individual Retirement Accounts (IRAs);

(ix) Interest income;

(x) Dividend income;

(xi) Trust income;

(xii) Annuities;

(xiii) Net capital gains;

(xiv) Disability or retirement benefits that are received from the Social Security Administration pursuant to Title II of the Social Security Act, whether paid to the parent or to the child based upon the parent's account;

(xv) Workers compensation benefits, whether temporary or permanent;

(xvi) Unemployment insurance benefits;

(xvii) Judgments recovered for personal injuries and awards from other civil actions;

(xviii) Gifts that consist of cash or other liquid instruments, or which can be converted to cash;

(xix) Prizes;

(xx) Lottery winnings; and

(xxi) Alimony or maintenance received from persons other than parties to the proceeding before the tribunal.

Tenn. Comp. R. & Regs., ch. 1240-02-04-.04.

The $250,000 that Husband earned while working in Australia represents wages and should have been included as income for child support purposes. It is irrelevant that the employment was only temporary or may not provide recurring income. The Guidelines expressly include other types of nonrecurring income, such as gifts, prizes, and lottery winnings. *See* Tenn. Comp. R. & Regs., ch. 1240-02-04-.04; *see also Moore v. Moore*, 254 S.W.3d 357 (Tenn. 2007). It also is without significance for child support purposes that Husband incurred expenses while living in Australia, as the Guidelines expressly state that "gross" income is to be included. Upon remand, the trial court shall consider this $250,000

as additional income to Husband for the purpose of calculating child support.

## C. Inclusion of Alimony as Income to Wife

Wife asserts that it was error for the trial court to include the alimony she was receiving from Husband as part of her income for child support purposes. Wife directs this Court to the definition of gross income found in the Child Support Guidelines, which includes "[a]limony or maintenance **received from persons other than parties to the proceeding before the tribunal**." Tenn. Comp. R. & Regs., ch. 1240-02-04-.04 (emphasis added). Because Husband is a party to this proceeding, Wife argues that the alimony she receives from him should not be included as part of her income for child support purposes. We agree.

Husband contends that the trial court correctly included these alimony payments as part of Wife's income, relying upon this Court's opinion in *Archer v. Archer*, 907 S.W.2d 412, 418 (Tenn. Ct. App. 1995). At the time *Archer* was decided, however, the Child Support Guidelines contained a different definition of "gross income," to wit:

> Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, **alimony or maintenance**, and income from self-employment.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03 (1994) (emphasis added). Under the definition of gross income in effect at that time, the inclusion of alimony was not limited to that "received from persons other than parties to the proceeding before the tribunal" as it is presently. Therefore, *Archer* is not controlling in this case. The plain language of the Guidelines expressly excludes from the recipient's income for child support purposes those alimony payments paid by the other party to the current proceeding. We conclude that the trial court erred in including the alimony payments Wife received from Husband as part of her income in the calculation of child support. Upon remand, those alimony payments shall not be included as a portion of Wife's income when the child support amount is calculated.

D. Imputation of Income to Parties

Wife further asserts that it was error for the trial court to impute income to her for child support purposes, as there was no proof presented during the modification hearing regarding whether jobs were available in her field of employment or what the potential salary would be for such positions. Husband contends that the trial court's imputation of income to Wife has become the law of the case, as there was no change in her employability from the time of the first trial in 2008 and the imputation of income was affirmed by this Court in the first appeal.

Wife further argues that if the trial court properly imputed income to her, income should have been imputed to Husband, as he had greater job experience and more advanced education than Wife in the same employment spectrum. Husband asserts that the trial court properly refused to impute income to him, as his employment was terminated and he was not voluntarily unemployed.

The issue of imputation of income to Wife was addressed in the prior appeal, wherein this Court found:

> Wife also argues that the Trial Court erred in imputing the amount of $72,000. The record reveals that Husband testified that there are companies in the community where Wife lives paying people with Wife's experience and level of education between $70,000 and $80,000. The record on appeal is devoid of evidence to the contrary.
>
> Wife argues that this Court should not accept Husband's testimony with regard to this issue as the Trial Court found Husband to be not credible. Wife is mistaken. The Trial Court found Wife to be more credible with regard to other issues, but clearly found Husband to be credible with regard to this issue. The Trial Court specifically found that "[Wife] is capable of earning between $72,000 and $80,000 a year in the Chattanooga area" and that "[t]here are positions paying these starting salaries in the Chattanooga area; such positions have been available for the last few years and would not be under the supervision or control of [Husband]."
>
> The evidence in the record on appeal does not preponderate against these findings. Given this, we find no error in the Trial Court's imputing income to Wife of $72,000 per year for the purposes of computing child support.

*Ghorashi-Bajestani,* 2010 WL 3323743 at *21.

-11-

At the hearing regarding modification of child support, neither party presented evidence regarding imputation of income or raised this as an issue. Following the hearing, the trial court adopted a child support worksheet, which again imputed income to Wife. Absent evidence to the contrary, we have no choice but to affirm the trial court's imputation of income to Wife for child support purposes.

With regard to Husband, the trial court refused to similarly impute income to him after finding that Husband was not voluntarily unemployed. The trial court found that Husband was terminated by TVA, was possibly unable to be employed in the same type of position as he previously held within the United States, and was able to find substitute work for a brief time in Australia. Weighing these factors, the trial court declined to find that Husband was voluntarily unemployed or under-employed. The evidence does not preponderate against this finding. We find no error in the trial court's failure to impute income to Husband, and we affirm the trial court's decision to impute income to Wife.

### E. Co-Parenting Days Used in Calculating Child Support Amount

Wife argues that the trial court erred in its calculation of child support because the court failed to consider the actual number of annual days the children spent with Husband in its calculation. Wife testified that Husband only spent a total of twenty-four days with the children in 2011 and two days with the children in 2012 as of the date of trial. The child support worksheet adopted by the trial court, however, reflects that Husband was spending the ninety days per year with the children that he was allowed under the existing permanent parenting plan.

As relevant to this issue, the Child Support Guidelines state that the worksheet should reflect "the number of days each child spends with each parent and/or non-parent caretaker." Tenn. Comp. R. & Regs., ch. 1240-02-04-.08(2)(a)(1). The Guidelines further state:

> For purposes of this chapter, **a "day" of parenting time occurs when the child spends** more than twelve (12) consecutive hours in a twenty-four (24) hour period **under the care, control or direct supervision** of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-02-04-.02(10) (emphasis added). Based on this language, it is clear the Guidelines contemplate that the number of "days" spent with each parent, as reflected on the worksheet, will be the actual number of days spent in the care of each parent,

as opposed to the number of days established under the permanent parenting plan.

Our case law regarding calculation of child support recognizes this requirement. *See Milam v. Milam*, No. M2011-00715-COA-R3CV, 2012 WL 1799029 at *6 (Tenn. Ct. App. May 17, 2012) (reversing the trial court's calculation of child support because the evidence preponderated against the trial court's finding that Father exercised 162.5 days of parenting time with the children); *Devore v. Devore*, No. E2010-02017-COA-R3CV, 2012 WL 11266 at *5 (Tenn. Ct. App. Jan. 4, 2012) ("the court should have considered . . . Husband's actual time spent with Daughter."); *Grisham v. Grisham*, No. W2010-00618-COA-R3-CV, 2011 WL 607377 at *8 (Tenn. Ct. App. Feb. 22, 2011) (reversing the trial court's calculation of child support because the actual time the father spent with the child was not reflected on the worksheet); *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777 at *5 (Tenn. Ct. App. July 31, 2008) ("Pursuant to the regulations, each parent enters into the Worksheet the number of days the child will spend with each parent.").

We conclude that the trial court erred in failing to consider the actual number of days Husband spent with the children in its calculation of child support. Upon remand, the trial court is instructed to enter the actual number of annual days of co-parenting time exercised by Husband, rather than the number of days allowed under the permanent parenting plan.

## V. Girls Preparatory School

Wife next argues that the trial court erred in requiring her to seek judicial intervention if Husband refused to allow their daughter to continue attending Girls Preparatory School following the 2012-2013 school year. Husband contends that the trial court properly ordered such judicial intervention because the permanent parenting plan requires that educational decisions be made jointly and because Wife had unilaterally increased the cost of the daughter's private school by sending her to Girls Preparatory School.

The trial court found that Husband was obligated, pursuant to his voluntary agreement, to pay the private school expenses for the children. The court also found:

> As to the decision to send the eldest child to Girls Preparatory School ("GPS"), although [Husband] claims that he did not agree to pay for the increase in expenses and tuition resulting from this change, his deposition shows he consented to the choice of school, at least for the 2012-2013 school year. Accordingly, [Husband] is obligated to pay the $19,750.00 tuition due upon his daughter's enrollment at GPS for this school year. However, if the parties cannot reach an agreement as to the proper school for the child and the increased expenses regarding the 2013-2014 school year, either is free to file

-13-

another Petition with this Court.

(Internal citations omitted.)

The trial court properly enforced the parties' permanent parenting plan, which requires Husband to pay for the private school expenses for the children through the twelfth grade but also requires that the decisions regarding the children's education be made jointly. We find no error in the trial court's ruling on this issue.

## VI. Security for Future Payments of Child Support and Alimony

Wife asserts that the trial court should have granted her a security interest in Husband's real property or other assets within the court's jurisdiction to secure his future payments of alimony and child support. Wife posits that Husband is a flight risk because he owns a home and other assets in Iran. The trial court found that Husband was not a flight risk because he owns significant assets in this country and because he voluntarily returned to the United States after his work in Australia was completed. The evidence does not preponderate against these findings. We conclude that the trial court did not err in its adjudication of this issue.

## VII.  Tax Rate on Deferred Compensation

Wife argues that the trial court erred in failing to take into consideration Husband's actual income tax rate in awarding her an equal share of the deferred compensation distributions. The trial court initially awarded Wife one-half of the TVA deferred compensation in the parties' divorce and later specified that "[i]f any transfer of any portion of the TVA Deferred Compensation Plan . . . results in a taxable event, each party will pay and be responsible for one-half of the taxes related thereto." When Husband received the first distribution from the deferred compensation plan, TVA had previously deducted 35% of the distribution for estimated taxes. Husband then paid Wife half of the net amount he received. Husband's tax return for that year, however, demonstrated that his actual income tax rate was less than 35%. When Husband received the second distribution of deferred compensation income, he retained 35% of the gross amount and sent Wife half of what remained.

Wife argues that this results in a financial windfall to Husband because if in any year his actual tax rate was less than 35%, she would be paying more than her ordered one-half

of the tax liability.[1] We agree. Upon remand, the trial court shall determine whether Wife is entitled to an award relative to previous distributions. Also, the trial court should establish appropriate measures to ensure that Wife receives the appropriate amount from future deferred compensation distributions in accordance with the court's previous order.

## VIII. Value of Deferred Compensation

Husband argues that the trial court should have granted his motion pursuant to Tennessee Rule of Civil Procedure 60 and adjusted the value of the deferred compensation account established at the time of the divorce. Husband asserts that the trial court improperly valued the account by including vested and unvested funds. According to his argument, because Husband was terminated from his employment before he was fully vested, he forfeited the unvested funds, thereby reducing the value of this asset.

The trial court found that Husband filed a "Rule 59/60 motion" following entry of the divorce regarding this same issue, which the court denied. Husband also raised the issue of error in the valuation of this asset during the first appeal, and this Court found that the evidence did not preponderate against the trial court's finding as to value. *Ghorashi-Bajestani,* 2010 WL 3323743 at *13. Following remand, the trial court declined to address Husband's subsequent Rule 60 motion regarding valuation of this asset because he had brought a prior motion on identical grounds. *See Daugherty v. Lumbermen's Underwriting Alliance*, 798 S.W.2d 754, 757-758 (Tenn. 1990).

The trial court further found that:

> Even assuming the Petitioner's Rule 60 Motion could properly be addressed and was adequately supported, as a practical matter, the specific valuation attributed to the compensation plan does not matter. The Respondent is entitled to 50% of the disbursement regardless of the value.

We agree with the trial court that the overall valuation of this asset is immaterial because it was ordered to be divided equally between the parties. The important point is simply that Wife receive her full 50% of the disbursements, as stated above. We find this issue to be without merit.

---

[1] For example, Wife asserts that in 2011, Husband's actual tax rate was 30.22%. The gross deferred compensation distribution for 2011 was $1,343,476.00, and 30.22% of that amount would be $405,998.44, leaving a net distribution of $937,477.56 after taxes. Wife only received $436,629.81; however, one-half of $937,477.56 would be $468,738.78, a difference of over $32,000.

IX. Attorney's Fees at Trial and On Appeal

Husband argues that the trial court erred in awarding Wife attorney's fees based on his contempt regarding untimely payment of alimony and child support. Husband asserts that he prevailed in his petition seeking modification of child support as well as other issues and thus should not have to pay the amount of fees awarded to Wife.

Husband does not dispute the propriety of the trial court's finding of contempt based on his failure to timely pay child support and alimony. He instead takes issue with the amount of attorney's fees awarded by the trial court. Such fee awards are reviewed under an abuse of discretion standard, and this Court "will not interfere with the trial court's decision to award attorney's fees unless it is shown that 'manifest injustice would be done if the award is allowed to stand.'" *Freeman v. Freeman*, 147 S.W.3d 234, 244 (Tenn. Ct. App. 2003) (quoting *Long v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997)). As our Supreme Court has stated:

> The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts," and Tennessee has "no fixed mathematical rule" for determining what a reasonable fee is. Accordingly, a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party."

*Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (internal citations omitted).

The trial court reviewed the detailed billing statements from Wife's attorneys and determined a reasonable fee award. Having reviewed the evidence and fee award in this case, we conclude that the trial court did not abuse its discretion in awarding Wife a portion of her fees.

Wife is seeking an award of attorney's fees on appeal. As this Court has stated:

[I]t is in the sole discretion of this court whether to award attorney's fees on

-16-

appeal.  As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted).  As both parties have been, to some extent, successful in this appeal, and with both parties having the ability to pay attorney's fees, we decline to award any additional fees to Wife.

## X.  Conclusion

The trial court's award of child support is vacated, and the case is remanded for a determination of the proper amount of child support consistent with this opinion.  Upon remand, the trial court must determine if Wife is entitled to an award relative to previous deferred compensation distributions and establish appropriate measures to effectuate an equal distribution of the deferred compensation account, taking into consideration Husband's actual tax rate.  The trial court's order is affirmed in all other aspects.  Wife's request for an award of attorney's fees on appeal is denied.  Costs on appeal are assessed equally to both parties.

_____
THOMAS R. FRIERSON, II, JUDGE