IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2024 Session

## LISA L. COLLINS v. SEAN R. HARRISON

**Appeal from the Juvenile Court for Davidson County**
**No. PT257024, PT256675, PT267848    Sheila Calloway, Judge**

_____

**No. M2023-00248-COA-R3-JV**

_____

This is a modification of child support case.  Mother appeals the trial court's: (1) discovery rulings regarding Father's inheritance, banking, and trading accounts; (2) findings with respect to Father's income; (3) denial of an upward deviation from the Child Support Guidelines; and (4) assignment of the Guardian ad Litem costs to Mother.  We reverse the trial court's order denying Mother's discovery requests and the assignment of the Guardian ad Litem costs to Mother.  We vacate the order establishing Father's child support obligation and denying Mother's request for an upward deviation.  All other issues are pretermitted, and we remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed in Part; Vacated in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Wende J. Rutherford, Nashville, Tennessee, for the appellant, Lisa L. Collins.

Wesley Clark, Nashville, Tennessee, for the appellee, Sean R. Harrison.

## OPINION

### I. Background and Procedural History

Appellant Lisa L. Collins ("Mother") and Appellee Sean R. Harrison ("Father") are the unmarried parents of a minor child who was born in 2008.  Mother is an attorney whose practice focuses on adoption, and Father is a pharmacist who owns his own pharmacy.  The parties have engaged in an on-going dispute regarding Father's parenting time and child

support obligation. In January 2015, the Juvenile Court for Davidson County ("trial court") entered an agreed parenting plan that amended the parties' 2010 parenting plan. The 2015 plan named Mother as primary residential parent and granted Father 101 parenting days per year. The 2015 plan set Father's gross monthly income as $8,333.00 and Mother's gross monthly income as $11,796.00. It set Father's child support obligation at $670.00 per month. In January 2017, a magistrate judge heard Father's petition to modify his child support obligation, and Father appealed the magistrate's decision to the trial court. Following a hearing in March 2017, in April 2017, the trial court entered an agreed order leaving Father's child support obligation unchanged. The 2017 agreed order barred Father from bringing an action to modify child support for three years. In January 2018, Father filed a petition to modify the parenting plan with respect to his parenting time. In his petition, Father specifically stated that he did not seek modification of his child support obligation. In November 2018, following a two-day trial, the parties entered an agreed plan modifying Father's parenting time. The 2018 parenting plan named Mother as the primary residential parent and provided Father 136 parenting days per year. The 2018 plan reaffirmed that Father's gross monthly income was $8,333.00, and Mother's gross monthly income was $11,796.00. It restated that Father's child support would "remain" at $670.00 per month and further provided that "[t]he days allotted to each parent pursuant to this new plan shall not affect the computation for child support under this provision and the parties shall consider this an upward deviation."

When the three-year prohibition period for modification of child support ended in April 2020, Father filed a petition to modify his child support on the ground that there was at least a fifteen percent variance between the amount of child support recited in the previous parenting plans and his proposed *pro rata* share under the current Child Support Guidelines ("Guidelines"). In May 2020, Mother filed a petition to modify the parenting plan, alleging that the existing plan was no longer in the child's best interest. She also prayed for an *ex parte* restraining order prohibiting Father from exercising parenting time pending an investigation of Father by Child Protective Services and a criminal investigation by the Smyrna Police Department. The trial court granted an *ex parte* restraining order on the same day and appointed a Guardian ad Litem ("GAL") for the child.

On May 27, 2020, a juvenile court magistrate heard Mother's petition. By order of July 2020, the magistrate found that the GAL "generally agreed with Mother's position." However, the magistrate: (1) noted that the investigation of Father was closed without indictment; (2) determined that a "less restrictive alternative" existed to "mitigate any harm to the child"; and (3) dismissed Mother's petition. In October 2020, Father filed a motion to transfer the matter to the trial court, and the motion was granted in February 2021.

Discovery ensued in the trial court, and both parties filed a number of motions, including Father's April 2021 motion to limit discovery and for an order of protection. On April 13, 2021, the trial court heard the parties' motions in limine and: (1) denied Mother's

motion to dismiss Father's petition; (2) granted Father's motion to compel discovery; (3) granted Mother's motion to continue; (4) ordered that the GAL have unrestricted access to the "entirety of th[e] case file"; and (5) ordered that the GAL's access to the entirety of the file would not be impaired. By order of June 21, 2021, the trial court granted Father's motion regarding several of Mother's discovery requests. With respect to Mother's request for discovery related to Father's inheritance from his father, the trial court ordered Father to provide materials for the trial court to review *in camera*.

The parties subsequently filed cross-motions to compel discovery, to limit discovery, and for sanctions. Relevant here are Mother's repeated motions for discovery of: (1) Father's business records, including records concerning the percentage of the business owned by Father, annual gross revenue, annual net revenue, and Father's profit and loss statements; (2) Father's income tax returns for the previous three years, including supporting documentation; and (3) a copy of Father's "monthly bank account statement for each bank account at which [he] ha[s] a business or personal checking account, for the last twelve months." In December 2021, Mother filed a motion re-asserting her discovery requests and asking the trial court to reconsider its June order regarding discovery of Father's inheritance. She argued that "Father did not disclose that he had received an inheritance when his income was calculated for purposes of child support to determine his prior child support obligation." Mother also asserted that Father did not disclose "substantial assets in an Ameritrade account" and "failed to disclose the existence of this asset[.]" She sought an order compelling discovery of all assets and asserted that she

> is entitled to have the requested [d]iscovery concerning investment accounts, trading accounts, money markets, trust accounts and savings accounts to determine if any portion of the Father's inheritance remaining as of the date of hearing can be reasonably presumed to have investment income potential regardless of whether Father is currently using the proceeds that way.

Mother also asserted that Father's failure to disclose his inheritance income "amounted to a fraud upon the [c]ourt." Father again moved for an order of protection "from further disclosure of these accounts." Father argued that, in the 2018 action, he was not required to provide information related to his inheritance because the trial court's April 2017 order expressly prohibited the parties from re-litigating the issue of child support for three years. Father further asserted that "discovery of relevant evidence" was "readily obtainable through the provided federal tax documents." Specifically, he argued that "[a]ssets themselves are only relevant where there is no reliable evidence of income potential, and this scenario is inapplicable to the case at bar."

On December 21, 2021, the trial court held a hearing; by order of January 18, 2022, the trial court granted, in part, the parties' respective motions to compel. It denied Father's motion to relieve the GAL and ordered Father to

- 3 -

produce monthly account statements for January 2021 through December 2021 for all business and/or personal checking and/or savings accounts maintained during this time. Statements shall include an account summary noting beginning balance, deposits and other credits, withdrawals and other debits, checks, service fees, and ending balance.

It further ordered Father to "provide Mother with documents reflecting his net and gross income for the year 2021." On January 18, 2022, Father filed a motion to quash Mother's subpoenas for production of documents related to his TD Ameritrade and Bank of America accounts.

On January 24, 2022, Mother filed an answer and counter-petition for modification of child support. In her petition, Mother asserted that the parties' November 2018 agreed final order set child support at $670.00 per month and explicitly provided that the amended parenting plan "shall not affect the computation for child support under this provision and the parties shall consider this an upward deviation." She also asserted that the agreed order specifically acknowledged that a previous award of attorney's fees to Mother in the amount of $10,000.00 was vacated in consideration of the 2018 agreement. Mother prayed for an additional deviation from the child support amount recited in the 2018 agreement to provide for private high school education for the child.

On February 9 and September 28, 2022, the trial court heard: (1) Father's April 2020 petition to modify child support; (2) Mother's May 2020 petition to modify the permanent parenting plan and for an *ex parte* restraining order; and (3) Mother's January 2022 counter-petition to modify child support. At the February 9 hearing, the parties stipulated to a number of agreements regarding Father's behavior in the presence of the child and agreed not to discuss the events leading to those agreements in the presence of the child. "Based on these stipulations," by order of January 23, 2023, the trial court dismissed Mother's petition to modify the parenting plan and for an *ex parte* restraining order. With respect to Father's child support obligation, the trial court found that the parties' 2018 agreed order setting Father's obligation at $670.00 per month was based on: (1) Father's gross monthly income of $8,333.00 and Mother's gross monthly income of $11,796.00; (2) the award of 136 parenting days to Father; (3) a presumptive support amount of $271.00 per month; and (4) an agreed upward deviation of $399.00 per month. The trial court found that "both parties tend[ed] to understate their income." Based primarily on the parties' income tax returns, the trial court found Mother's income to be $17,173.00 per month, with a self-employment tax of $1,000.00 per month and Father's income to be $8,783.00 per month. After giving Mother credit for the cost of the child's healthcare insurance, the trial court determined that Father's presumptive child support amount was $155.00 based on the parties' incomes and parenting time. The trial court found that a significant variance existed between Father's presumptive child support obligation as established in 2018 and the current presumptive amount of $155.00, and it reduced Father's obligation to $155.00 per month retroactive to the September 28, 2022 hearing. It also found that Father was

entitled to reimbursement of any child support overpayment for four months.

The trial court found that application of the Guidelines was neither unjust nor inappropriate and dismissed Mother's counter-petition for modification of child support. The trial court also found that: (1) Mother's decision to enroll the child in a private high school did not impact her lifestyle; (2) Father testified that an upward deviation would impact his lifestyle, and (3) "Mother's complaint that her full payment of [private school] tuition expenses impacts her ability to save money for the child's college expenses is essentially an argument that [Father] should have to pay more money in child support now so Mother can save it for college expenses." The trial court found that Mother failed to carry her burden to rebut the presumptive child support amount under the Guidelines and declined her request for an upward deviation. The trial court also: (1) assessed the GAL fees to Mother; (2) declined both parties' requests for attorney fees; (3) declined to award sanctions to either party; and (4) ordered costs of the matter to be split between the parties. Based on the parties' stipulations at the February 2022 hearing, the trial court entered several injunctions regarding Father's inappropriate activities in the presence of the child, including enjoining the parties from discussing, with the child outside the presence of a therapist, the events described in Mother's petition to modify the parenting plan. Mother filed a timely notice of appeal.

## II. Issues

Mother raises the following issues for review, as stated in her brief:

1. Whether the trial court erred in refusing to allow discovery of Father's inheritance, Father's trading accounts and Father's online gambling accounts.

2. Whether the trial court erred in finding that Father's income tax return was reliable evidence of his actual income.

3. Whether the trial court erred in the calculation of Father's income.

4. Whether the trial court erred in finding Father was entitled to a modification in child support based on the number of days allocated to each parent in the parenting plan.

5. Whether the trial court erred in refusing to require Father to contribute to the extraordinary educational expense of private schooling for the minor child.

6. Whether the trial court erred in assessing the fees of the Guardian ad litem to Mother.

Father asserts that Mother waived these issues by failing to cite applicable legal authority, failing to appropriately cite to the record, and failing to make more than skeletal arguments. Father also raises the following additional issues, as stated in his brief:

1. Whether the trial court abused its discretion in determining the effective date of Father's child support modification.

2. Whether the trial court abused its discretion in declining to award Father's attorney's fees pursuant to Tenn. Code Ann. § 36-5-103(c) and/or Tenn. R. Civ. P. 37.

3. Whether the trial court abused its discretion in excluding Father's self-employment tax from the child support calculation?

4. Whether Father is entitled to his attorney's fees on appeal pursuant to the discretion of the Court of Appeals.

### III. Standard of Review

This case was tried without a jury. Accordingly, our review of the trial court's findings of fact is *de novo* on the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Phillips v. Hatfield***, 624 S.W.3d 464, 473-74 (Tenn. 2021) (citations omitted). Appellate review of a trial court's conclusions on issues of law is *de novo* with no presumption of correctness. ***Cooper v. Mandy***, 639 S.W.3d 29, 33 (Tenn. 2022) (citation omitted).

### IV. Analysis

### A. Waiver

Before addressing the substantive issues, we first address Father's assertion that Mother waived her issues by failing to cite to the record and to legal authority and by failing to make more than a skeletal argument. As we have long noted:

Our Courts have "routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by Rule 27(a)(7) [of the Tennessee Rules of Appellate Procedure] constitutes a waiver of the issue[s] [raised]." ***Bean v. Bean***, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). In ***Bean***, we went on to hold that "an issue is waived where it is simply raised without any argument regarding its merits." ***Id.*** at 56; *see also* ***Newcomb v. Kohler Co.***, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to

any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). As we stated in *Newcomb*, a "skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Newcomb*, 222 S.W.3d at 400. It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument. *Bean*, 40 S.W.3d at 56.

*Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009); *see also Stine v. Jakes*, No. M2021-00800-COA-R3-JV, 2022 WL 2297647, at *9 (Tenn. Ct. App. June 27, 2022).

Mother's issues are largely predicated on her argument that the trial court erred in denying full discovery of Father's financial information, which denial resulted in the trial court's incorrect calculation of Father's income. Although Mother's brief is not a model regarding either citation or argument, it is sufficient to allow this Court to conduct a meaningful review of the issues. Additionally, under Tennessee Rule of Appellate Procedure 2, we may exercise our discretion to suspend the briefing requirements and will do so particularly in cases involving the interests of children. *Chiozza*, 315 S.W.3d at 489. Accordingly, we turn to the question of whether the trial court erred in denying Mother's discovery requests.

## B. Discovery Rulings Concerning Father's Income

Mother's first issue concerns the trial court's discovery rulings regarding Father's income. A trial court's discovery decisions are generally subject to the deferential abuse of discretion standard of review. *Crotty v. Flora*, 676 S.W.3d 589, 607 (Tenn. 2023) (citation omitted). A trial court abuses its discretion "when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (citations omitted). However, in child support cases, the trial court's "discretion must be exercised within the strictures of the Child Support Guidelines." *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000). Additionally, parties generally "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Tenn. R. Civ. P. 26.02(1). Thus, "[t]he information sought . . . through discovery must have some logical connection to proving [the] case and/or obtaining [the] prayed-for relief." *West v. Schofield*, 460 S.W.3d 113, 125 (Tenn. 2015).

The income of the obligor parent is "[g]enerally[] the most important finding in a child support proceeding[.]" *Eldridge v. Eldridge*, 137 S.W.3d 1, 20 (Tenn. Ct. App. 2002). Further, "'[t]he integrity of a child support award is dependent upon the trial court's accurate determination of both parents' gross income.'" *Tate Davis v. Hood*, No. M2014-02490-COA-R3-CV, 2016 WL 3662434, at *5 (Tenn. Ct. App. June 30, 2016) (quoting *Milam v. Milam*, No. M2011-00715-COA-R3-CV, 2012 WL 1799029, at *3 (Tenn. Ct.

App. May 17, 2012)).  As we have observed,

> [t]he Guidelines recognize the importance of having "reliable information regarding a parent's current ability to support when establishing a support order." *In re Samuel P.*, No. W2016-01665-COA-R3-JV, 2018 WL 1046784, at \*13 (Tenn. Ct. App. Feb. 23, 2018) (citing *Eatherly v. Eatherly*, No. M2000-00886-COA-R3-CV, 2001 WL 468665, at \*4 (Tenn. Ct. App. May 4, 2001)). When the evidence of a parent's income is incomplete, the courts and the parties "'find themselves in a serious quandary.'" *Id.* at \*14 (quoting *Kirchner v. Pritchett*, No. 01A01-9503-JV-00092, 1995 WL 714279, at \*2 (Tenn. Ct. App. Dec. 6, 1995)). However, the Child Support Guidelines "are not intended to permit [ ] parents to avoid their obligation to support their children simply by keeping inadequate records of their income and expenses or by resisting appropriate discovery requests for this information." *Id.* (quoting *Kirchner*, 1995 WL 714279, at \*3).

*Al Qaisi v. Alia*, No. M2020-00390-COA-R3-CV, 2021 WL 345416, at \*7 (Tenn. Ct. App. Jan. 28, 2021).  Additionally, "[a] parent's reported income may not truly reflect his or her ability to provide support."  *Id.* (quoting *In re Samuel P.*, 2018 WL 1046784, at \*14).

When determining a parent's gross income for the purpose of setting child support, the trial court "***shall*** include all income from *any source* (before deductions for taxes and other deductions such as credits for other qualified children), whether earned or unearned[.]"  Tenn. Comp. R. & Reg. 1240-02-04-.04(3)(a) (emphasis added).[1]  The Guidelines contain a non-exclusive list of sources of income to be considered by the trial court that includes, in relevant part: (1) wages; (2) salaries; (3) interest income; (4) dividend income; (5) net capital gains; and (6) inheritances that consist of cash or other liquid instruments, or which can be converted to cash or produce income.  Tenn. Comp. R. & Reg. 1240-02-04-.04(3)(a). Although the primary focus is the income regularly acquired by the obligor, *Hill v. Hill*, No. E2019-02226-COA-R3-CV, 2021 WL 4745384, at \*3 (Tenn. Ct. App. Oct. 12, 2021), under the Guidelines, ""money received by inheritance can be considered as income[.]"" *Wadhwani v. White*, No. M2015-01447-COA-R3-CV, 2016 WL 4579192, at \*17 (Tenn. Ct. App. Aug. 31, 2016) (quoting *Ford v. Ford*, No. 01A01-9611-CV-00536, 1998 WL 730201, at \*4 (Tenn. Ct. App. Oct. 21, 1998)).  Inherited

---

[1] We note that there have been three versions of the Guidelines in effect during the pendency of this case, but the October 1, 2021 version applies here.  The October 2021 Guidelines apply in "every judicial . . . action to . . . modify . . . child support . . ., whether the action is filed before or after the effective date of [the Guidelines], where a hearing which results in an order . . . modifying . . . support is held after the effective date of [the Guidelines]."  Tenn. Comp. R. & Regs. 1240-02-04-.01(2)(a).  Although Father filed his petition to modify child support in April 2020, before the October 1, 2021 effective date, the trial court did not hear the issue of child support until the trial in February and September 2022.  Because the hearing that resulted in an order modifying Father's child support obligation occurred after the October 1, 2021 effective date, the October 2021 Guidelines apply to this case.

amounts may be averaged over a period of years rather than counted as income for only one year. *Id.* Additionally, capital gains are considered in the calculation of income, and proration of gains over time is permitted. *Alexander v. Alexander*, 34 S.W.3d 456, 463 (Tenn. Ct. App. 2000). Further, when a parent's income is variable, the Guidelines permit the court to determine income by averaging. *Id.* at 460. Under the Guidelines, "all capital gains, including those from an isolated transaction, should be considered in calculating gross income for the purpose of setting child support." *Moore v. Moore*, 254 S.W.3d 357, 360 (Tenn. 2007). Thus, while the Guidelines afford the court discretion to average variable income or prorate one-time income amounts such as an inheritance or capital gain, it does not permit the court to merely disregard a source of income. *See id.*

Although the trial court apparently conducted an *in camera* review of documents related to Father's inheritance, it did not permit Mother to access these documents in discovery. Similarly, the trial court did not permit discovery of Father's Ameritrade or Bank of America accounts. As discussed above, sources of income for purposes of determining child support include interest income, dividend income, net capital gains, and inheritance. *See* Tenn. Comp. R. & Reg. 1240-02-04-.04(3)(a). As such, any information regarding Father's inheritance and income he received from his investments was relevant to the issue of his child support obligation. Tenn. R. Civ. P. 26.02(1); *West*, 460 S.W.3d at 125. Accordingly, the trial court abused its discretion when it denied Mother's motion to compel Father to produce documents related to same. In other words, the trial court's discovery rulings did not permit a full examination of all sources of Father's income as required by the Guidelines. Therefore, we reverse those rulings and remand for full discovery of Father's income and income potential, including his inheritance, Ameritrade account, Bank of America account, and other discoverable accounts as required under the Guidelines. Because this holding may affect the trial court's findings regarding Father's income, we vacate the trial court's order with respect to Father's child support obligation and whether an upward deviation is warranted.

### C. Guardian Ad Litem Fees

We turn next to Mother's assertion that the trial court erred in assessing the GAL fees to her. Generally, an award of GAL fees is within the discretion of the trial court. *Kesterson v. Varner*, 172 S.W.3d 556, 573 (Tenn. Ct. App. 2005) (citing Tenn. R. Civ. P. 54.04). In its final order, the trial court stated that it appointed the GAL based on Mother's allegations in her petition to modify the parenting plan and for an *ex parte* restraining order. The trial court noted that a criminal investigation regarding Mother's allegations of Father's behavior in the child's presence was closed without an indictment, and the parties entered an agreed order providing that Father would restrain from engaging in the activities alleged by Mother. The trial court also ordered the parties to refrain from discussing Mother's allegations except in the presence of the child's therapist and stated:

The parties in this matter have a history of not communicating with each other and using the court as the forum to resolve conflicts. In this matter, it is clear that had Mother simply addressed her concerns with Father, there could have been a resolution of the matters without the court's involvement or the need for the appointment of a third guardian ad litem.

Although the juvenile court magistrate found that the GAL agreed with Mother's position, the trial court assessed the GAL fees to Mother.

Although Father was not indicted for child abuse, the trial court dismissed Mother's petition "based on" Father's agreement to refrain from the behaviors complained of. Additionally, in view of the parties' long and on-going dispute, it is highly unlikely that the matter would have been resolved had Mother "simply addressed her concerns" with Father. Having review the record, we reverse the assessment of GAL fees to Mother with instructions to assess them to Father.

## V. Conclusion

For the foregoing reasons, the trial court's order regarding Mother's discovery requests for full disclosure of Father's inheritance, Ameritrade accounts, and Bank of America accounts are reversed. The trial court's assessment of GAL costs to Mother is also reversed. Because further discovery may affect the trial court's order regarding Father's child support obligation and Mother's request for an upward deviation, those rulings are vacated. All remaining issues are pretermitted. The case is remanded with instructions to assess the GAL fees to Father and for such further proceedings and hearings as may be necessary and are consistent with this Opinion. Father's request for appellate attorney's fees is denied. Costs of the appeal are assessed to Appellee, Sean R. Harrison, and execution for costs may issue if necessary.

           s/ Kenny Armstrong

        KENNY ARMSTRONG, JUDGE