# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 17, 2024 Session

## MEGAN ELIZABETH WEST BREWSTER v. BRANDON PAUL BREWSTER

**Appeal from the Circuit Court for Bradley County**
**No. V-19-584       J. Michael Sharp, Judge**

_____

**No. E2023-01240-COA-R3-CV**

_____

In this post-divorce action, the father filed a petition seeking to modify the parties' agreed permanent parenting plan based on alleged mental and emotional instability of the mother. During trial, the father sought to remove the guardian *ad litem* for purportedly violating her duties pursuant to Tennessee Supreme Court Rule 40A; however, the trial court denied the father's motion. The father also sought to introduce statements by the minor children indicating that the mother had told them private information regarding the parties' divorce. Upon objection by the mother and the guardian *ad litem*, the trial court determined such statements to be inadmissible hearsay. The trial court ultimately entered an order on August 4, 2023, determining that modification of the parties' permanent parenting plan was neither necessary nor in the best interest of the parties' children despite certain changes in the parties' circumstances. The trial court also denied the father's motion for a restraining order against the mother, although the court found that the mother's actions had been inappropriate. The trial court further ordered that each party would pay his or her own attorney's fees. The father timely appealed. Upon our thorough review, we vacate the trial court's determination concerning child support and its finding regarding the mother's gross income. We remand for further hearing as needed and a determination of the mother's gross income with instructions to the trial court to consider whether gifts or payment of living expenses by her family should have been included. The trial court shall then be required to recalculate child support utilizing the proper gross income amount for the mother. The trial court's judgment is affirmed in all other respects. We deny the father's request for an award of attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Corrin P. Fulton, Chattanooga, Tennessee, for the appellant, Brandon Paul Brewster.

Randy Sellers, Cleveland, Tennessee, for the appellee, Megan Elizabeth West Brewster.

Wencke West, Cleveland, Tennessee, Guardian *ad litem*.

# OPINION

## I. Factual and Procedural Background

The parties, Brandon Paul Brewster ("Father") and Megan Elizabeth West Brewster ("Mother"), were divorced by decree of the Bradley County Circuit Court ("trial court") on August 18, 2020. The parties had two minor children, who were ages four and two at the time of the divorce. In an agreed permanent parenting plan ("PPP") entered concomitantly with the divorce decree, the trial court ordered that Mother would enjoy co-parenting time of 194 days and Father co-parenting time of 171 days annually.[1] The parties were awarded joint decision-making authority concerning the children and Mother was named the primary residential parent.

On July 20, 2021, Father filed a petition for declaratory judgment regarding the PPP. The dispute involved a difference in the parties' interpretations concerning co-parenting time for holidays, vacations, and the day-to-day schedule. The trial court entered an agreed order on December 14, 2021, clarifying the co-parenting schedule.

Days later, on December 22, 2021, Father filed a petition seeking modification of the PPP, modification of child support, and a restraining order against Mother ("the Petition"). In the Petition, Father averred that a material change in circumstance had occurred, rendering the PPP no longer in the best interest of the children. Father alleged that Mother suffered from mental and emotional instability and that Mother spoke disparagingly about him to the children, "shar[ing] intimate and untrue details of the parties' divorce" with them. Father further averred that Mother had harassed him by calling in the middle of the night and showing up unannounced at his home and at the children's school during his co-parenting time. Father submitted a proposed permanent parenting plan with the Petition, which designated him as primary residential parent and significantly increased his co-parenting time. Father also filed separate motions requesting entry of a restraining order against Mother and the appointment of a guardian *ad litem* ("GAL") for the children. In response, Mother filed a motion to dismiss for failure to state a claim upon which relief could be granted on February 22, 2022. In her motion, Mother also claimed that the December 2021 agreed order had *res judicata* effect on any matters raised in the Petition.

---

[1] Although a copy of the parties' PPP does not appear in the record, the parties agree that its provisions are as stated herein, and the trial court reiterated these provisions in its final order.

On April 19, 2022, Father filed a response to Mother's motion to dismiss, averring that the motion was not Mother's first pleading in reply to the Petition, which constituted a fatal flaw pursuant to Tennessee Rule of Civil Procedure 12.02. Father stated that Mother had first filed a "Notice of Unavailability and Motion to Continue" on February 4, 2022, before filing her motion to dismiss.[2] Father further averred that the doctrine of *res judicata* did not apply because the prior agreed order did not alter or modify the PPP.

The trial court conducted a hearing on April 20, 2022, regarding Father's motion to appoint a GAL, motion for a restraining order, and motion to compel, as well as Mother's motion to continue. The trial court entered an order on April 27, 2022, finding that the parties had agreed to the court's appointment of a GAL.[3] The trial court ordered Mother to file an answer to the Petition, and the court set the hearing on both the motion for restraining order and the motion seeking modification for the same day. The court further ordered the parties to attend mediation.

On May 10, 2022, Mother filed her answer to the Petition, averring "as an affirmative defense" that she had never been diagnosed with a mental illness or treated for one. Mother further denied various other factual allegations contained in the Petition as "affirmative defenses" and averred that Father's proposed PPP was not in the children's best interest because she had always been their primary caregiver. Mother concomitantly filed a counter-petition for modification of the PPP, claiming that Father's actions had affected the children in such a negative manner that counseling was required. Mother accordingly requested that the trial court order counseling for the children. In addition, Mother averred that the current co-parenting schedule was disruptive to the children and requested that Father's co-parenting time be reduced by eliminating Father's mid-week visits.

On May 11, 2022, the trial court entered an order denying Mother's motion to dismiss, finding that the issues raised concerning modification were not barred by *res judicata*. Father subsequently filed a response to Mother's counter-petition, admitting that a material change in circumstance existed warranting modification of the PPP and that the children needed counseling.

The trial court conducted a bench trial spanning three days: September 30, 2022; December 16, 2022; and December 20, 2022. At the beginning of trial, Father's counsel attempted to have the GAL removed from the case due to her alleged failure to obtain the children's residential preferences and present those to the court and also for her purported

---

[2] This document does not appear in the record.

[3] The trial court entered a separate order appointing attorney Wencke West as GAL on April 28, 2022.

failure to interview Father. Father's counsel argued that such was a violation of Tennessee Supreme Court Rule 40A.[4] In response, the GAL stated that she had spoken to Father, Mother, and the children, but she argued that it was not in the best interest of the children to question them about their living preference due to their young ages and that such action was not required under Rule 40A for children under twelve. The trial court denied Father's motion to remove the GAL, finding that she had fulfilled her responsibilities.

During trial, the court heard testimony from both parties as well as from Darrell Brewster, the paternal grandfather; Shirley Price, Father's aunt; Kelley West, the maternal grandmother; and Deborah Rayburn, an assistant teacher at the children's school. During Father's testimony, Father attempted to state that Mother had told the children details of the parties' relationship and divorce. Mother's counsel objected on hearsay grounds, and the trial court sustained the objection despite Father's argument that the statements were admissible as hearsay exceptions pursuant to Tennessee Rule of Evidence 803(25).[5]

Father filed a notice of summary of voluminous recordings as a trial exhibit on December 2, 2022, concerning thirty-five recordings that he had made of conversations with Mother without her knowledge. Mother filed an objection to the notice on December 14, 2022. During the December 16, 2022 trial date, the trial court ruled that any recording made prior to the date of the final divorce decree's entry was not admissible by reason of the doctrine of *res judicata*. As to the remaining recordings, the court admitted some and excluded others; however, the trial court stated that it would not consider anything the children had said in the recordings due to their ages. The court therefore ruled that any recordings admitted containing the children's voices could not be offered for the truth of the matter asserted; rather, they would only be admitted to demonstrate whether one or both parties spoke inappropriately in front of the children.

---

[4] Tennessee Supreme Court Rule 40A requires, *inter alia*, that the GAL "satisfy the duties and responsibilities of the appointment in an unbiased, objective, and fair manner." One duty of the GAL is to "conduct an investigation to the extent the guardian ad litem considers necessary to determine the best interests of the child." Tenn. Sup. Ct. R. 40A, § (8)(b)(1).

[5] Tennessee Rule of Evidence 803(25) provides in pertinent part:

> Children's statements. Provided that the circumstances indicate trustworthiness, statements made about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse or neglect, offered in a civil action concerning issues of dependency and neglect pursuant to Tenn. Code Ann. § 37-1-102(b)(12), issues concerning severe child abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(21), or issues concerning termination of parental rights pursuant to Tenn. Code Ann. § 37-1-147 and Tenn. Code Ann. § 36-1-113, and statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse offered in a civil trial relating to custody, shared parenting, or visitation.

The trial court entered its written order addressing the competing petitions to modify on August 4, 2023. In the order, the trial court made extensive factual findings, including that each party had submitted proof evincing that he or she enjoyed close relationships with the children. The trial court also found that the children were healthy and were positively involved in their school activities and counseling.

As to modification, the trial court found that numerous changes had occurred since entry of the divorce decree, including that the children were growing older and that their school and extracurricular activities were changing. Notably, the court found that the "single biggest change affecting these parties and their children has been the parents' ongoing struggle to get along." Although the court found that certain actions by Mother were inappropriate, it declined to grant Father's request for a restraining order, noting that Mother was undergoing counseling to deal with "hurt" and "loss" resulting from the divorce. The court directed that the parties should avoid certain actions and behaviors, including discussion of the divorce with the children, to afford the children "the opportunity to have a positive[,] loving[,] appropriate relationship with both parents going forward." The court further directed the parties to continue in counseling.

The trial court found that Mother was the parent who had historically performed the majority of the parenting responsibilities even though Father was also "positively involved with both children." The trial court also determined that no physical or emotional abuse had been inflicted by either parent. Because of the loving relationships between each party and the children and because both parties were capable of being positive, reasonable parents, the trial court found that the existing PPP remained appropriate and in the children's best interest. The court therefore declined to modify the PPP or its designation of Mother as primary residential parent, stating:

> The court finds that the permanent parenting plan that the parties agreed to and put in place on the date of their divorce was and remains an appropriate parenting plan. The court finds that when that permanent parenting plan is followed, it is in the best interests of the children. The court finds that this plan has offered continuity and stability in the children's lives. Therefore, while the court finds there have been some material change of circumstances, the court does not find that those changes justify or warrant changing of the existing permanent parenting plan. The court finds that the current parenting plan entered in this court on August 18, 202[0,] shall remain the permanent parenting plan. The court finds that the original/existing permanent parenting plan was and is in the best interest of the children. The court finds that the parents shall immediately begin parental counseling for the purpose of allowing these parents the opportunity to learn how to appropriately co-parent going forward with their children. Given the ages of these children, it is imperative that these parents learn to positively co-parent their children. It is also imperative that these parents

- 5 -

learn to appropriately and reasonably communicate about their children. This is in the best interest of these children.

Concerning child support, the trial court found that Father earned a gross income of $115,000.00 annually and that Mother had annual gross earnings of $45,000.00. The court thus ordered that child support should be calculated based upon these income amounts and the co-parenting schedule set forth in the PPP. Lastly, the trial court ordered each party to pay his or her own attorney's fees and to divide the court costs equally. Father timely appealed.

## II. Issues Presented

Father presents the following issues for this Court's review, which we have restated slightly:

1.      Whether the trial court erred in failing to modify the PPP when the trial court found that a material change in circumstance existed.

2.      Whether the trial court erred by making factual findings that were not supported by a preponderance of the evidence.

3.      Whether the trial court erred by determining that the children's statements regarding psychological abuse were inadmissible hearsay.

4.      Whether the trial court erred by failing to include all of Mother's gross income for the purposes of setting child support.

5.      Whether the trial court erred by failing to dismiss the GAL from participation in the trial.

6.      Whether the trial court erred by denying Father's request for an award of his attorney's fees and costs.

7.      Whether Father should be awarded his attorney's fees and costs incurred on appeal.

## III. Standard of Review

Regarding the proper standard of review in a case involving modification of a permanent parenting plan, our Supreme Court has explained:

In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569. Statutory interpretation is a question of law, which we review de novo. *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).

A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732 [(Tenn. 2005)]; *Kendrick*, 90 S.W.3d at 570; *Hass*, 676 S.W.2d at 555.

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

\* \* \*

> Once a permanent parenting plan has been incorporated in a final divorce decree, the parties are required to comply with it unless and until it is modified as permitted by law. *See* Tenn. Code Ann. § 36-6-405 (2010). In assessing a petition to modify a permanent parenting plan, the court must first determine if a material change in circumstances has occurred and then apply the "best interest" factors of section 36-6-106(a). *Id.* § 36-6-101(a)(2)(B)-(C) (2010), -106(a) (2010 & Supp. 2013); *see also Kendrick*, 90 S.W.3d at 570; *Boyer* [*v. Heimermann*], 238 S.W.3d [249,] 255 [(Tenn. Ct. App. 2007)].

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93, 697-98 (Tenn. 2013). Additionally, "[w]e defer to the trial court's determinations of witness credibility because the trial judge could observe the witnesses' demeanor and hear in-court testimony." *Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018).

In addition, "admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion." *Austin v. City of Memphis*, 684 S.W.2d 624, 634 (Tenn. Ct. App. 1984); *see also In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted). Likewise, child support decisions are also reviewed pursuant to the abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

## IV. Modification of PPP

Father first argues that the trial court erred by failing to modify the PPP following the court's finding that a material change in circumstance had occurred. Father contends that the trial court should have adopted his proposed parenting plan as representing the children's best interest, including its designation of him as primary residential parent and its proposed award of additional co-parenting time to Father. As this Court has previously explained:

> A determination of whether a material change in circumstances has occurred depends on whether a parent is seeking to modify custody or to modify the residential parenting schedule. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). In particular, modification of custody requires a higher threshold than that required for modification of a residential schedule. *Hawk v. Hawk*, No. E2015-0133-COA-R3-CV, 2016 WL 901518, at \*9 (Tenn. Ct.

App. Mar. 9, 2016). The section of the statute applicable [in a case involving a potential change in custody] provides that:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). Not every change in circumstances constitutes a material change. Rather, "'[t]he change must be significant before it will be considered material.'" *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *5 (Tenn. Ct. App. Dec. 9, 2015) (quoting *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). There is no bright-line test for courts to use when determining whether a material change in circumstances has occurred. *McClain v. McClain*, 539 S.W.3d 170, 188 (Tenn. Ct. App. 2017). But, courts consider the following principles in making this determination:

> "First, the change of circumstances must involve either the child's circumstances or a parent's circumstances that affect the child's well-being. Second, the changed circumstances must have arisen after the entry of the custody order sought to be modified. Third, the changed circumstances must not have been reasonably anticipated when the underlying decree was entered. Fourth, the change in circumstances must affect the child's well-being in some material way."

*Canzoneri v. Burns*, No. M2020-01109-COA-R3-CV, 2021 WL 3399860, at *6 (Tenn. Ct. App. Aug. 4, 2021) (quoting *McClain*, 539 S.W.3d at 188) (citation omitted).

*Paden v. Davison*, No. M2023-00240-COA-R3-JV, 2024 WL 3159510, at *4-5 (Tenn. Ct. App. June 25, 2024).

In the instant action, the trial court found in pertinent part:

> The court finds that there have been numerous changes in these parties' lives since the date of the divorce. Not only are the children getting

- 9 -

older, their school activities and responsibilities as well as other extracurricular activities are also bringing about change in the children's lives, they also represent change in the parents' lives too. However, the court notes that the single biggest change affecting these parties and their children has been the parents' ongoing struggle to get along.

Following its consideration of the statutory best interest factors relative to a modification to the PPP, the court again found that "there have been some material change[s] of circumstances." Neither party takes issue with the trial court's determination that a material change in circumstance was proven in this matter.

We reiterate that once a trial court concludes that a material change in circumstance has occurred, the court must proceed to determine whether modification of the current designation of primary residential parent or co-parenting schedule is in the best interest of the children. *See id.; see also McClain v. McClain*, 539 S.W.3d 170, 189-190 (Tenn. Ct. App. 2017). With regard to this determination, the version of Tennessee Code Annotated § 36-6-106(a) (West July 1, 2021, to March 18, 2022) in effect at the time Father's petition was filed provided the following regarding analysis of the best interest of the children:[6]

> (a)     In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> > (1)     The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

---

[6] In his brief, Father urges that the trial court should have considered the limiting factors provided in Tennessee Code Annotated § 36-6-406 (West June 11, 2020, to current) when adjudicating a modification of the parties' co-parenting schedule. *See* Tenn. Code Ann. § 36-6-404(b) (West July 1, 2014, to current) ("If the limitations of § 36-6-406 are not dispositive of the child's residential schedule, the court shall consider the factors found in § 36-6-106(a)(1)-(15)."). Although the trial court did not specifically address the § 36-6-406 limiting factors in its order, its factual findings support a conclusion that the trial court did not find any of these limiting factors applicable in this situation. We likewise conclude that the limiting factors found in § 36-6-406 are inapplicable here.

- 10 -

(2)     Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3)     Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The

court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)    The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

Concerning the best interest analysis, this Court has previously explained:

"Whether modification of a parenting plan serves a child's best interests [is a] factual question[]." *Armbrister*, 414 S.W.3d at 692. "The pertinent factors

to be considered in the best interest analysis are set forth in Tennessee Code Annotated section 36-6-106." *C.W.H.* [*v. L.A.S.*], 538 S.W.3d [488] at 497 [(Tenn. 2017)]. As this Court has explained, "[a]scertaining a child's best interests does not call for a rote examination" of each of the factors "and then a determination of whether the sum of the factors tips in favor or against [one] parent." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005). Furthermore, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *Id.*

*In re Jonathan S.*, No. M2021-00370-COA-R3-JV, 2022 WL 3695066, at *9 (Tenn. Ct. App. Aug. 26, 2022). With these principles in mind, we will review the trial court's weighing of the best interest factors.

In analyzing the children's best interest, the trial court found that Mother and Father each had "significant, stable[,] and loving relationship[s] with both of their children." Specific to factor (1), the court also noted that Mother "had been the parent who has performed the majority of parenting responsibilities relating to the daily needs of the children," although the court found that Father had "been positively involved with both children and in appropriately handling the parenting responsibilities relating to the daily needs of the children during his parenting time." Regarding the second factor, the court found that both parents had exhibited, through past performance and their testimony, that they possessed the ability to be responsible parents and to co-parent successfully. The court noted that Mother had been "devastated" by the divorce and had experienced difficulty in "fully and positively promoting [Father's] relationship with the children." The court found that Mother, through counseling and her support system, had the ability to move past the divorce and facilitate a positive relationship between Father and the children.

Respecting factor (4), the trial court determined that both parents possessed the disposition and ability to provide the children with food, clothing, and all necessary care. Concerning factor (5), the court reiterated that Mother had been the primary caregiver for the children and had "taken the greater responsibility for performing parental responsibilities through the date of these hearings." The court also found that Father had "positively shared in the responsibility for care-giving, as well as performing his parental responsibilities."

Pursuant to factor (6), the trial court found that both parents had "deep love, affection[,] and emotional tie[s] between themselves and their children." The court also determined that this had been a benefit to the children. Regarding factor (7), the trial court noted that if the parents could work together and "promote the other parent to the children," this would benefit the children in the future. Relevant to factor (8), the court found that both parents proffered "the overall mental and emotional ability to positively co-parent their children in a way that enhances their education and life skills." The court further found no physical or emotional abuse of the children by either parent, which impacts factor

- 13 -

(11). Finally, concerning factor (14), the court found that "both parents' employment schedules lend themselves to positively parenting their children" and that both parents had made and would continue to make "all necessary work adjustments consistent with a proper parenting schedule."

Based upon our thorough review of the record, we conclude that the evidence preponderates in favor of the trial court's findings concerning these applicable best interest factors. In addition, we determine that although the trial court did not specifically mention factor (9) (the children's interaction and relationships with other relatives and involvement with school and other activities) or factor (10) (the importance of continuity in the children's lives), our review of the evidence supports the conclusion that the children enjoyed relationships with each parent's extended family, that they were supported by both parents in their school and extracurricular activities, and that both parents had facilitated continuity in the children's lives. With reference to the omission of factors (3) and (13), we note that no evidence was presented regarding these factors.

After considering the evidence in light of the best interest factors, the trial court concluded that the parties' original PPP, executed in 2020 at the time of the divorce, had served and would continue to further the best interest of the children. We reiterate that this PPP provides that Mother enjoys co-parenting time of 194 days per year and that Father enjoys co-parenting time of 171 days annually, which is a near-equal division of co-parenting time. In addition, the PPP provides that the parties will exercise joint decision-making authority concerning the children.

As the trial court specifically stated:

> The court finds that the permanent parenting plan that the parties agreed to and put in place on the date of their divorce was and remains an appropriate parenting plan. The court finds that when that permanent parenting plan is followed, it is in the best interests of the children. The court finds that this plan has offered continuity and stability in the children's lives. Therefore, while the court finds there have been some material change of circumstances, the court does not find that those changes justify or warrant changing of the existing permanent parenting plan. The court finds that the current parenting plan entered in this court on August 18, 202[0,] shall remain the permanent parenting plan. The court finds that the original/existing permanent parenting plan was and is in the best interest of the children. The court finds that the parents shall immediately begin parental counseling for the purpose of allowing these parents the opportunity to learn how to appropriately co-parent going forward with their children. Given the ages of these children, it is imperative that these parents learn to positively co-parent their children. It is also imperative that these parents

- 14 -

learn to appropriately and reasonably communicate about their children. This is in the best interest of these children.

We emphasize that when reviewing a trial court's decision concerning modification of a parenting plan, the court's decision should not be reversed absent an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). Here, the trial court considered the appropriate statutory best interest factors and determined that the evidence supported a conclusion that the provisions of the original PPP remained in the children's best interest. Having reviewed the evidence presented in consideration of the applicable factors, we discern no abuse of discretion in that decision.

Father asserts that the trial court made certain erroneous factual findings affecting its analysis of the best interest factors. We disagree. For example, Father argues that the trial court found that "K5" (kindergarten) was not required to be completed and was merely a preschool program such that it did not matter that the child had excessive absences during that year. Father contends that kindergarten is required by the State of Tennessee. Although the trial court did state in its order that K5 was not required, the proof at trial actually established that the children experienced excessive absences during their K3 and K4 years, which were proven to be preschool years wherein attendance was not required. Accordingly, this statement by the trial court regarding "K5" appears to have been a typographical error while the court's finding that the excessive absences occurred during a preschool year with no attendance requirement was correct.

Another example of an allegedly erroneous factual finding by the trial court concerns Mother's testimony that she regularly continued to attend counseling at the time of trial. Father argues that Mother had not seen her counselor for two months by the time of trial and that she had not attended counseling on a regular basis since the divorce. Mother's testimony, however, was that she had visited a counselor beginning in 2019, prior to the divorce, and had "consistently gone or been in contact with [her] counselor or therapist since then." Mother explained that she saw one counselor before the divorce, saw another counselor "during the divorce," and then returned to her original counselor in March 2022. Although Mother had not seen her counselor for two months at the time of trial in December 2022 due to scheduling issues, she testified that she had an appointment to see the counselor in January 2023.

We reiterate that upon our thorough review of the evidence presented at trial, we conclude that the evidence preponderates in favor of the trial court's factual findings concerning the best interest analysis. We further reiterate our conclusion that the trial court did not abuse its discretion when determining that the existing PPP should remain in place. We therefore affirm the trial court's determination that the children's best interest would be served by maintaining the existing PPP, including its designation of Mother as primary residential parent.

- 15 -

## V. Hearsay

Father posits that the trial court erred by declining to "allow testimony of the children's statements or listen to recordings wherein the children are speaking."[7] In support, Father cites solely to the transcript from the first day of trial, wherein Father was testifying and attempted to repeat statements purportedly made to him by the children. Father argued that the statements were admissible as a hearsay exception pursuant to Tennessee Rule of Evidence 803(25) as "statements about abuse or neglect made by a child alleged to be the victim of . . . psychological abuse offered in a civil trial related to custody, shared parenting, or visitation." The trial court ruled that the children's statements at issue were inadmissible hearsay.

Mother contends that Father has waived consideration of this issue by failing to make an offer of proof during trial in accordance with Tennessee Rule of Evidence 103(a), which provides: "Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." We note that "[a]n appellate court is confined to the evidence heard and preserved at trial." *Almany Realtors v. Hawkins*, No. 86-148-II, 1987 WL 7325, at *4 (Tenn. Ct. App. Mar. 6, 1987). A failure to preserve excluded evidence ordinarily renders the issue of admissibility waived. *See Hill v. Hill*, No. M2006-01792-COA-R3-CV, 2008 WL 110101, at *5-6 (Tenn. Ct. App. Jan. 9, 2008). As the *Hill* Court explained:

> The Tennessee Rules of Evidence provide that a trial court's error may not be predicated upon a ruling which admits or excludes evidence unless "a substantial right of the party is affected," and when the ruling excludes evidence, "the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103.

> * * *

> The due process right to a full hearing before a court includes the right to introduce evidence and have judicial findings based upon such evidence. *Baltimore & Ohio R.R. Co. v. United States*, 298 U.S. 349, 368-69, 56 S. Ct. 797, 80 L. Ed. 1209 (1936). An erroneous exclusion of evidence, however, does not require reversal unless we can determine the evidence would have

---

[7] We note that in his brief, Father failed to (1) cite to the portion of the transcript wherein the trial court made admissibility rulings concerning the recordings and (2) include any substantive argument concerning the recordings. We therefore deem any argument Father may have intended to make concerning the admissibility of the recordings to have been waived. *See* Tenn. Ct. App. R. 6(b); Tenn. R. App. P. 27(a)(7); *see also Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000).

affected the outcome of the trial had it been admitted. *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987). The appellate courts cannot make such a determination without knowing what the excluded evidence would have been. *Stacker v. Louisville & N. R.R. Co.*, 106 Tenn. 450, 61 S.W. 766, 766 (Tenn. 1901); *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). It is for these reasons that the burden is on the party challenging the exclusion of evidence to make an offer of proof to enable the appellate court to determine whether the exclusion of proffered evidence was reversible error. Tenn. R. Evid. 103(a)(2); *State v. Goad*, 707 S.W.2d 846, 853 (Tenn. 1986); *Harwell v. Walton*, 820 S.W.2d 116, 118 (Tenn. Ct. App. 1991).

An offer of proof should contain the substance of the evidence excluded and the evidentiary basis supporting the admission of the evidence. Tenn. R. Evid. 103(a)(2). These requirements may be satisfied by presenting the actual testimony, stipulating the content of the excluded evidence, or presenting a summary, oral or written, of the excluded evidence. *Harrison v. Laursen*, No. 01A01-9705-CH-00238, 1998 WL 70635, at *3 (Tenn. Ct. App. Feb. 20, 1998) (citing Neil P. Cohen et al., *Tennessee Law of Evidence* § 103.4, at 20 (3d ed.1995)). Generally, the appellate courts will not consider issues relating to the exclusion of evidence when this tender of proof has not been made. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001); *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833-34 (Tenn. Ct. App. 1997).

*Id*. (footnote omitted).

In the instant action, we are unable to determine whether the excluded testimony relative to the children's statements would have affected the outcome of the trial due to Father's failure to make an offer of proof concerning these statements. In the transcript passage cited by Father in his brief, Father merely stated that the children would "ask [him] questions that have been told to them by Mom." In response to an objection by Mother's counsel, Father further expounded that the children had "details about our relationship and divorce that they shouldn't have." Father provided no other substantive information by way of an offer of proof regarding these statements. As this Court has explained: "It is incumbent upon the appellant to provide the appellate court with a record that will permit it to fairly review the issues raised on appeal. . . . [A]n appellate court cannot consider issues relating to the exclusion of evidence if the excluded evidence is not preserved in the record." *Almany Realtors*, 1987 WL 7325, at *4. Accordingly, we conclude that Father has waived the issue presented regarding the trial court's exclusion of his testimony concerning the children's statements. *Id*.

## VI. Mother's Income

Father asserts that the trial court erred by failing to include all of Mother's income for child support purposes. The trial court determined Mother to have gross income of $45,000 per year, apparently based on Mother's testimony regarding her salary from her employment as a teacher. However, Father propounds that Mother's parents contributed to her living expenses by paying her housing payment, car payment, utilities, and internet costs. In addition, Father argues that Mother had admitted receipt of an $11,000 gift from her grandmother after the divorce. Father contends that these payments should be included as part of Mother's gross income when calculating child support in accordance with the Tennessee Child Support Guidelines' directive that gross income "shall include all income from any source," expressly requiring the inclusion of "[g]ifts that consist of cash or other liquid instruments, or which can be converted to cash, or which can produce income such as real estate, or which reduces a parent's living expenses such as housing paid by others; in whole or in part[.]" *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(1)(xviii).

Mother acknowledges that the Guidelines provide for gifts and payment of living expenses to be included in a parent's gross income. She contends that the living expenses being paid by Mother's parents on her behalf were also being paid before the parties divorced. Mother failed, however, to further develop this argument or provide authority demonstrating how this consideration would be relevant, and we likewise know of no such authority. Mother further contends that Father did not object at trial to Mother's income being set based solely on her employment income and that he did not cite to specific proof demonstrating the amounts of such gifts by Mother's family. We disagree with Mother's contentions that the proof concerning gifts and payment of expenses should be ignored and conclude that Father has advanced a valid argument concerning Mother's gross income.

We note that in the Petition, one of the issues raised by Father was whether child support should be modified "to account for . . . Mother's income and potential income[.]" Mother had apparently been unemployed for a period of time while the children were very young and testified that shortly before trial, she had obtained employment as an elementary school teacher on a full-time basis. When questioned at trial, Mother stated that her gross salary from that employment was $44,904 annually. When Mother was further questioned regarding expenses paid on her behalf by her parents, she explained that she lived in a three-bedroom home owned by her parents, with her parents paying the mortgage payments. Mother reported paying them no rent on this residence. Mother also related that her parents paid her monthly utilities and internet costs. However, no amounts were provided for any of these payments. Additionally, Mother acknowledged that her parents paid her car payment of $650 per month and that her grandmother had given her $11,000 since the divorce.

Ms. West, Mother's mother, likewise testified that she and her husband had been paying the mortgage payments associated with the home where Mother and the children

were residing but stated that she did not know the amount of those payments because her husband made them. Ms. West admitted that Mother paid no rent. Ms. West further acknowledged that she and her husband paid Mother's utilities and internet costs. She again stated no specific amounts for these payments.

In accordance with the Guidelines, this Court has previously considered financial gifts from family when calculating a party's income for child support purposes. *See Howell v. Howell*, No. M2013-02260-COA-R3-CV, 2014 WL 7466654, at *9 (Tenn. Ct. App. Dec. 30, 2014) (vacating the trial court's calculation of a party's gross income for child support purposes because the trial court failed to include financial gifts the party received from her parents). *See also Moore v. Moore*, 254 S.W.3d 357, 360 (Tenn. 2007) ("In addition to the inclusion of capital gains as 'gross income,' the Child Support Guidelines also include as 'gross income' items such as bonuses, <u>gifts</u>, severance pay, and prizes, all of which are typically nonrecurring income" (emphasis added)). Therefore, we conclude that the trial court's failure to consider such gifts to and payment of expenses on behalf of Mother was error such that the court's determination of Mother's gross income and resultant child support calculation must be vacated.

Concerning Mother's argument that Father failed to raise an issue during trial regarding the inclusion of gifts to or expenses paid on behalf of Mother in her gross income, we note the following exchange from the trial transcript in relation to Father's counsel's cross-examination of Mother regarding such gifts/expenses:

| Trial Court: | How is that going to help me, counsel? |
|---|---|
| Father's Counsel: | Your Honor, that goes to one of the factors that you have to consider, the financial capability. It also goes to her income for child support purposes. So gifts that they've received when someone's paying for their lifestyle you can impute that as their income because that's not money that they're having to dole out themselves. So the child support . . . guidelines allow that so that's where we're kind of going by it's relevant, your Honor. |

We therefore determine Mother's postulate that Father failed at trial to seek inclusion of other income to be unavailing.

Mother does raise an important point, however, respecting the lack of evidence at trial concerning the amount of expenses paid on her behalf. Specifically, no evidence was provided concerning the amount of the payments made by Mother's parents for the home in which she resides, including amounts for utilities and other recurring costs.

Accordingly, we must remand this issue to the trial court for further hearing as needed and a determination regarding Mother's gross income upon consideration of gifts or payment of living expenses by Mother's family. The trial court will then be required to recalculate child support utilizing the proper gross income amount for Mother.

## VII. GAL

Father asserts that the trial court erred by allowing the GAL to participate during the trial because the GAL had allegedly failed to fulfill her duties pursuant to Tennessee Supreme Court Rule 40A and had also purportedly exhibited bias in favor of Mother. Father urges that the GAL failed to interview Father regarding his concerns and "did not consider nor ask for the children's expressed objectives to know what to advocate on behalf of the children." Father further contends that the GAL stated that she was waiting to hear all of the proof at trial before deciding what she believed to be in the children's best interest, which prevented her from representing the children's objectives at trial and having the ability to disclose to the trial court whether the children's objectives were in conflict with what she believed to be in their best interest as required by Rule 40A. Upon thorough review, we determine Father's arguments to be unavailing.

Tennessee Supreme Court Rule 40A, Section 8, provides:

(a)     The guardian ad litem shall satisfy the duties and responsibilities of the appointment in an unbiased, objective, and fair manner.

(b)     A guardian ad litem shall:

(1)     conduct an investigation to the extent that the guardian ad litem considers necessary to determine the best interests of the child, which can include, but is not limited, to ascertaining:

(i)     the child's emotional needs, such as nurturance, trust, affection, security, achievement, and encouragement;

(ii)    the child's social needs;

(iii)   the child's educational needs;

(iv)    the child's vulnerability and dependence upon others;

(v)     the child's needs for stability of placement;

(vi)    the child's age and developmental level, including his or her sense of time;

- 20 -

(vii) the general preference of a child to live with known people, to continue normal activities, and to avoid moving;

(viii) the love, affection and emotional ties existing between the child and the parents;

(ix) the importance of continuity in the child's life;

(x) the home, school and community record of the child;

(xi) the willingness and ability of the proposed or potential caretakers to facilitate and encourage close and continuing relationships between the child and other persons in the child's life with whom the child has or desires to have a positive relationship, including siblings; and

(xii) the list of factors set forth in Tenn. Code Ann. § 36-6-106.

(2) obtain and review copies of the child's relevant medical, psychological, and school records as provided by Section 7.

(3) within a reasonable time after the appointment, interview:

(i) the child in a developmentally appropriate manner, if the child is four years of age or older;

(ii) each person who has significant knowledge of the child's history and condition, including any foster parent of the child; and

(iii) the parties to the suit;

(4) if the child is twelve (12) years of age or older, seek to elicit in a developmentally appropriate manner the reasonable preference of the child;

(5) consider the child's expressed objectives without being bound by those objectives;

(6)     encourage settlement of the issues related to the child and the use of alternative forms of dispute resolution; and

(7)     perform any specific task directed by the court.

(c)     If the child asks the guardian ad litem to advocate a position that the guardian ad litem believes is not in the child's best interest, the guardian ad litem shall:

(1)     fully investigate all of the circumstances relevant to the child's position, identify every reasonable argument that could be made in favor of the child's position, and identify all of the factual support for the child's position;

(2)     discuss fully with the child and make sure that the child understands the different options or positions that might be available, including the potential benefits of each option or position, the potential risks of each option or position, and the likelihood of prevailing on each option or position.

(3)     if, after fully investigating and advising the child, the child continues to urge the guardian ad litem to take a position that the guardian ad litem believes is contrary to the child's best interest, the guardian shall take all reasonable steps to:

(i)     subpoena any witnesses and ensure the production of documents and other evidence that might tend to support the child's position; and

(ii)    advise the court at the hearing of the wishes of the child and of the witnesses subpoenaed and other evidence available for the court to consider in support of the child's position.

The record herein reveals that when the trial commenced, Father's attorney presented an issue concerning whether the GAL had appropriately complied with her duties and responsibilities proscribed by Rule 40A. When the trial court heard argument with respect to this issue, the GAL informed the court that she had met with both parties separately prior to mediation. The GAL also articulated that she had performed home visits at each parent's home, had reviewed all recordings and pleadings, and had spoken to the children and visited with them in both home environments, which she felt was most effective given their ages.

In addition, the GAL submitted a proposed permanent parenting plan at the beginning of trial that she related was based on her opinion concerning the children's best interest considering the information she had gleaned from her interviews, home visits, and investigation prior to trial. This assertion clearly belies Father's argument that the GAL was awaiting introduction of proof at trial before advocating a position concerning the children's best interest. However, the GAL did state that she felt it was inappropriate to ask the children about their living preferences due to their ages of four and six years old. As she explained:

> These are children who don't understand what's going on in the court. When I met with these children they were playing on the floor and we were having a discussion. But I'm not going to sit here and say to a six year old, Hey, where do you want to live? I think that's wholly inappropriate. And, frankly, it's not their decision to be made at the moment. Thirteen years old, sure, that's what the law says. But for me to come in here and tell you what I think a five and a four year old – or six and a four year old want, I'm sorry, but that's not how that works and that's not how I'm looking at this case as guardian.

After hearing from the GAL and counsel for both parents, the trial court ruled that the GAL would not be excluded from participating in this case. Following our review, we affirm the trial court's decision in this regard.

Despite Father's arguments on appeal, there has been no proof presented to demonstrate that the GAL was derelict in her duties pursuant to Rule 40A. The GAL stated, as an officer of the court, that she had conducted an investigation to determine the best interest of the children by interviewing the children and parents, reviewing all pleadings filed, and reviewing the recordings submitted by Father. The GAL further stated that she had interviewed the children in what she believed was a developmentally appropriate manner and had devoted equal time to meeting with both parents individually and observing the children in both Mother's and Father's homes. Father did not present proof refuting the GAL's statements.

In consideration of Father's specific complaints on appeal, we note that the GAL was not required to "elicit in a developmentally appropriate manner the reasonable preference of the child[ren]" because the children were under the age of twelve. *See* Tenn. Sup. Ct. R. 40A, § 8(b)(4). Moreover, by reason of their young ages, there was no demonstration that they had "expressed objectives" to the GAL or asked the GAL to advocate a position that the GAL believed was not in the children's best interest. *See id.* at § 8(b)(5), (c). Based on the record before us, we conclude that the trial court properly determined that the GAL had complied with all duties and responsibilities required of her, and we affirm the trial court's determination on that point.

Finally, Father argues that the GAL demonstrated bias in favor of Mother premised on her statement during trial that "taking away time from the mother is punitive to the children." However, the GAL had previously explained that based on her investigation, she had concluded that both parents were good and fit parents and that the existing PPP was in the children's best interest. The GAL further clarified her belief that with some direction from the trial court regarding their own communication, the parents could effectively work together under the existing PPP to the benefit of the children. Accordingly, considering the GAL's statements as a whole, we determine that Father has not demonstrated that the GAL acted with bias. This issue is without merit.

## VIII. Attorney's Fees

Father argues that the trial court erred by failing to award him attorney's fees following trial. In so arguing, Father cites Tennessee Code Annotated § 36-5-103(c) (West July 1, 2021, to current), which provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

As this Court has previously explained:

> "[T]he decision to grant [trial] attorney's fees under section 36-5-103(c) is largely within the discretion of the trial court and that, absent an abuse of discretion, appellate courts will not interfere with the trial court's finding." *Eberbach* [*v. Eberbach*], 535 S.W.3d [467,] 475-76 [(Tenn. 2017)]. Similarly, "when appellate attorney's fees are requested pursuant to statutes like section 27-1-122 and section 36-5-103(c), which expressly permit the court to exercise its discretion, the Court of Appeals should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate." *Id*.

*Emch v. Emch*, No. M2021-00139-COA-R3-CV, 2022 WL 3972749 (Tenn. Ct. App. Sept. 1, 2022).

Father asserts that he was the "prevailing party" at trial inasmuch as he "received more relief from the trial court" than Mother. Assuming, *arguendo*, that this statement were true, it ignores the fact that an award of fees is still within the trial court's discretion. Here, the trial court directed that each party would be responsible for his or her own

attorney's fees.  We note that Father was unsuccessful in persuading the trial court that a modification of the PPP was necessary or that a restraining order was warranted. Therefore, we discern no abuse of discretion in the trial court's decision to deny an award of attorney's fees to Father.

Father further requests attorney's fees on appeal, also pursuant to § 36-5-103(c). Although Father was successful in demonstrating an error in the trial court's calculation of child support as pertaining to Mother's gross income, he was unsuccessful concerning his other issues presented.  Ergo, we likewise determine, in our discretion, that Father shall not be awarded attorney's fees on appeal.

## IX.  Conclusion

For the foregoing reasons, we vacate the trial court's determinations regarding child support and Mother's gross income.  We remand these issues for further hearing as needed and a determination of the mother's gross income with instructions to the trial court to consider whether gifts or payment of living expenses by her family should have been included.  The trial court is further directed to recalculate child support utilizing the appropriate gross income amount for the mother.  We affirm the trial court's decision in all other respects, including its denial of Father's request for attorney's fees.  We also deny Father's request for attorney's fees on appeal.  This case is remanded to the trial court for further proceedings consistent with this opinion.  Costs on appeal are assessed to the appellant, Brandon Paul Brewster.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE